```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA,                      :
                                               :
                         Plaintiff             :
                                               :       09 CR 625 (HB)
          - against -                          :
                                               :       OPINION &
                                               :       ORDER
WENDY JIMENEZ, et al.,                         :
                                               :
                         Defendants            :
------------------------------------------------------------------------x
```

**Hon. Harold Baer, Jr., District Judge:**

       Defendant Wendy Jimenez ("Defendant" or "Jimenez") was arrested for various alleged activities related to a conspiracy to file false federal and state tax returns with identification information primarily from citizens of Puerto Rico,[1] so as to collect the tax refunds. She is charged, along with ten other defendants, with conspiracy to defraud the Unites States with Respect to Claims, 18 U.S.C. § 286, conspiracy to commit mail fraud and wire fraud, 18 U.S.C. § 1349, conspiracy to commit fraud in connection with identification documents, 18 U.S.C. § 1028(a)(7) and (f), and aggravated identity theft, 18 U.S.C. § 1028A(a)(1) & (2). Jimenez has moved to suppress statements that she made to officers in July 2009, following her arrest and waiver of *Miranda* rights. Jimenez is a diabetic and is also being treated for depression. She claims that her waiver was not valid because it was not done knowingly or voluntarily due to her medical conditions. An evidentiary hearing was held before me on January 13, 2010, where one witness – the arresting FBI agent – was called by the Government. For the reasons that follow, Defendant's motion is DENIED.

## DISCUSSION

       Wendy Jimenez was arrested on July 8, 2009 at John F. Kennedy International Airport after she arrived on an American Airlines flight from the Dominican Republic. *See* Government's Memorandum of Law in Opposition to Defendant's Pretrial Motion to Suppress, for Severance, and for Other Relief ("Govt's Mem."), Ex. A (FBI Transcript, Form FD-302); Suppression Hearing

---

[1] According to the Indictment filed by the Government, citizens of Puerto Rico typically do not have to file federal tax returns so long as their income is derived from sources in Puerto Rico. As such, use of their identification information in fraudulent tax returns would be less likely to trigger suspicion due to lesser chance of filings with duplicate information.

1

Transcript ("Hr'g Tr.") at 9:15-10:24 (Jan. 13, 2010). Five government agents met Jimenez, who was accompanied by her young niece, at the gate. Hr'g Tr. at 44:9-14. According to one of the arresting officers, Special Agent Seamus Clarke of the Federal Bureau of Investigation ("FBI"), she was not handcuffed at that time nor restrained in any way. Hr'g Tr. at 14:6-11. Jimenez deplaned with only a single small black kit,[2] which she informed the agents contained the items she needed to control her diabetes, i.e. blood-sugar measure, insulin, etc. Hr'g Tr. at 13:18-24. The agents asked if she was okay and if she had eaten, and Jimenez responded that she had not eaten and would need to check her blood sugar levels. Hr'g Tr. at 14:22-15:5. At the Customs checkpoint at the airport, Jimenez's niece was turned over to Jimenez's sister (the niece's mother). Jimenez was searched and allowed to check her blood sugar; Agent Clarke believed, but could not recall specifically that she also took insulin at that time. Hr'g Tr. at 18:17-19:25. Agent Clarke and another agent, Special Agent Anthony Ventre of the IRS, then took Jimenez to their car, handcuffed her, and proceeded to the midtown post office to lodge her with the postal police for the evening. Hr'g Tr. at 20:15-21:1. While en route, Agent Clarke began to speak to Jimenez, but she indicated that she had a headache and did not want to answer questions at that time; Clarke ceased his inquiries.[3] Hr'g Tr. at 21:17-22:5. After arrival at the post office with Defendant, Agent Clarke provided Jimenez with a large salad for her dinner and brought it to her holding cell. Hr'g Tr. at 21:2-13. She was then left for the evening.

The next morning, the agents returned to find Jimenez had not eaten the dinner left for her. Hr'g Tr. at 22:25-23:8. She was offered breakfast but declined. *Id.* Agent Clarke then took Jimenez to New York Downtown Hospital. Hr'g Tr. at 23:12-13. Jimenez claims she was taken because her "health deteriorated rapidly," Jimenez Aff. ¶ 8, while Agent Clarke stated it was because he knew that he would need a "Fit for Confinement" letter in order to transfer custody to the U.S. Marshalls. Hr'g Tr. at 23:15-24. The hospital diagnosed her with "pain" and "diabetes," indicated that Defendant was in fact "fit for confinement," and was provided with insulin and "patient education" about her condition. Govt's Hr'g Ex. 2 (Hospital Discharge Letter).

---

[2] The agents later learned she left another bag behind, which ultimately was provided to her sister.

[3] There is some discrepancy between Agent Clarke's testimony and his description of events a day after the arrest. According to his July 9, 2009 transcript, she was "verbally advised of her rights" during the car trip on July 8. *See* Govt's Mem., Ex. A (FBI Transcript Form FD-302). Yet, at the hearing, Clarke indicated only that he read Jimenez her *Miranda* rights the following day, July 9, upon return to the New York FBI Office after Defendant's visit to the hospital. *See* Hr'g Tr. at 29:13-22. Regardless, no relevant, substantive conversation is alleged to have occurred during the July 8 car trip and Defendant does not dispute that she was advised of her rights at least before the relevant statements made on July 9.

Clarke next brought Jimenez to the New York Office of the FBI, at 26 Federal Plaza. Hr'g Tr. at 29:10-13. There, he read Defendant an "Advice of Rights" form that contained the *Miranda* rights and a "Consent" section where an individual could waive their rights. Hr'g Tr. at 29:13-22; Govt's Hr'g Ex. 1 (FBI Advice of Rights Form); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). Jimenez signed the form, as did Agent Clarke and Agent Ventre. Hr'g Tr. at 33:16-21. She was then interrogated by the agents. Hr'g Tr. at 34:3-36:23.

Defendant argues that the statements she made to FBI agents after signing the "Advice of Rights" consent should be suppressed because her waiver was not done knowingly or voluntarily, and because the whole procedure took only two minutes. A valid waiver of *Miranda* rights requires two things: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). The court should perform a totality of the circumstances test to determine if there was "both an uncoerced choice and the requisite level of comprehension." *Moran,* 475 U.S. at 421; *Jaswal*, 47 F.3d at 542. In assessing the effect of a defendant's mental status on a waiver of *Miranda* rights, the question is whether the statements were the product of a "rational intellect" and "free will." *See Mincey v. Arizona*, 437 U.S. 385, 398 (1978). The nature of the statements made by defendant – whether they were clear, thorough, etc. – can demonstrate the defendant's level of awareness. *See Pagan v. Keane*, 984 F.2d 61, 63 (2d Cir. 1993).

Defendant has failed to demonstrate that her waiver was executed either unknowingly or involuntarily. Jimenez provides no evidence that she was in any way coerced by the agents to make her statements. *See, e.g., Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (in reviewing deficient mental condition issue "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998) ("[O]ne's mental state does not become part of the calculus for the suppression of evidence unless there is an allegation that agents of the United States engaged in some type of coercion."). By contrast, the Government provided substantial evidence that the environment was not unduly coercive: among other things, Defendant was not handcuffed in front of her niece, was given the opportunity to treat her diabetes, was repeatedly offered food, and was not further questioned after she informed the

agents that she had a headache. Jimenez does not show any evidence that she was intimidated, bullied, or otherwise induced to sign the consent form against her will.

Defendant also has not demonstrated that her statements were made unknowingly due to her medical conditions.[4] Jimenez only claims that she was dizzy and had a headache on both July 8 and 9, and "was not in a position to make a statement...or to waive my right to remain silent." Jimenez Aff. ¶ 10. Agent Clarke, however, testified repeatedly that at no time did he find Jimenez to be mentally deficient or otherwise affected by her diabetes or mental health issues. *See, e.g.,* Hr'g Tr. at 16:19-17:18, 40:19-21. Clarke interviewed Jimenez on three previous occasions before her arrest, and found her post-arrest statements and behavior consonant with her earlier statements and behavior. Hr'g Tr. at 43:10-16. He never noticed sweating, difficulty moving to the various locations, or trouble speaking and giving statements. Hr'g Tr. at 16:19-17:18. Clarke, a former Emergency Medical Technician, found her to be "alert and oriented times three," – aware of who she was, where she was, and the date. Similarly, the hospital found her to be in sufficient health to discharge her and deem her fit for confinement. Hr'g Tr. at 17:5-16. Finally, Jimenez's post-arrest statements, as described by Agent Clarke, do not indicate any issues with her mental status. She gave specific and concrete answers to pointed questions, such as names and addresses, and did not appear confused or disoriented. *See, e.g.,* Hr'g Tr. at 34:18-36:1; *see also* Govt's Hr'g Ex. 3501-D-2 (Description of Jimenez post-arrest statements, prepared by Agent Clarke). The weight of evidence clearly indicates that Defendant's statements were made knowingly.

## CONCLUSION

Based on the totality of circumstances mentioned above, I find that the Jimenez waived her *Miranda* rights freely and knowingly. Defendant's motion to suppress is DENIED. The Clerk of the Court is instructed to close the relevant motion on my docket.

SO ORDERED
January 15, 2010
New York, New York

_____
U.S.D.J.

---

[4] Jimenez asserts that she is currently on medication and under the care of a psychiatrist for severe depression. Jimenez Aff. ¶ 11. Little was said about this additional medical issue at the hearing, and I likewise find that it did not affect her ability to enter a valid waiver.

4